**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| **MATTHEW R. STIDHAM,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 1:06CV00172JCH/MLM** |
| | ) | |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**REPORT AND RECOMMENDATION OF**
**UNITED STATES MAGISTRATE JUDGE**

This is an action under Title 42 U.S.C. § 405 (g) for judicial review of the final decision of

Michael J. Astrue ("Defendant") denying the application of Matthew Stidham ("Plaintiff") for

Disability Insurance Benefits under Title II of the Social Security Act (the Act), 42 U.S.C. § 401 et

seq. and for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381,

et seq. Tr. 18-21, 64-66. Plaintiff has filed a brief in support of the Complaint. Doc. 9. Defendant has

filed a brief in support of the Answer. Doc. 10. The cause was referred to the undersigned United

States Magistrate Judge for a report and recommendation pursuant to Title 28 U.S.C. § 636(b)(1).

Doc. 2.

**I.**
**PROCEDURAL HISTORY**

Plaintiff filed applications for disability insurance benefits and SSI alleging a disability onset

date of August 15, 2003. Tr. 18-21, 64-66. Plaintiffs applications were denied.[1] Tr. 22-26, 33, 51-55.

---

[1]Missouri is one of several test states participating in modifications to the disability
determination procedures that apply in this case. See 20 C.F.R. §§ 404.906, 404.966,
416.1406,416.1466. (2002) These modifications include the elimination of the reconsideration

Plaintiff then requested a hearing which was held January 19, 2006, before Administrative Law Judge ("ALJ") James K. Steitz. Tr. 44-45, 48, 35-42. On May 11, 2006, the ALJ issued a decision finding that Plaintiff was not disabled through the date of the decision. Tr. 11-17. Plaintiff filed a request for review with the Appeals Council which request was denied on September 13, 2006. Tr. 2-7. As such, the ALJ's decision is the final decision of the Commissioner.

## II.
## TESTIMONY BEFORE THE ALJ

Plaintiff testified that, at the time of the hearing, he was forty-nine years old; that he was 6' tall and weighed 205 pounds; that he was living at home with his wife and son; and that he is a high school graduate with some college credit hours. Plaintiff also testified that he had worked in the aircraft industry for seventeen years; that starting in 1993 he worked both as a self-employed carpenter and in malls; that at the time of the hearing he was "writ[ing] bail bonds" for a "general bail bondsman"; and that he had worked in this latter capacity commencing two years prior to the hearing. Tr. 187-94. Plaintiff further testified that he believed he became disabled three or four years prior to the hearing.[2] Tr. 189.

Plaintiff testified that in the year prior to the hearing he made less than $500 writing bail bonds; that in the current year he "made a little bit better than that"; that writing bail bonds "is a job he can do if [he] feels like doing it"; that to write bonds, all he does is "just go into the jailhouse and write out a bond"; and that some months he does not get a call to write a bond. When asked by the ALJ why he would say that he made $1,000 a month in 2004, Plaintiff responded that he never made

_____

step and the elimination of the Appeals Council review step in the administrative appeals process. See id. Therefore, Plaintiff's appeal in this case proceeded directly from her initial denial of benefits to the administrative law judge level.

[2]     Plaintiff's testimony suggests that he worked as a carpenter until about three or four years prior to the hearing although his testimony in this regard is ambiguous.

such a statement; that he "was thinking $500 last year"; that "[i]t might have been $900, but I was thinking it was five"; that this amount was for the whole year; and that he had been writing bonds for about two years. Tr. 191-93.

Plaintiff testified that he has pain in his lower back; that this pain is a result of arthritis and crushed discs; that this pain keeps him from working; that "he really [does not] know" what caused the crushed discs, "it's just something that has happened over the years"; that pain restricts him from doing any type of work that he is "qualified to do"; that his back pain began over twenty years ago; that he has not had surgery on his back; that he is in constant pain; that he goes to a pain management clinic; that he takes pain medication for his back; that without medicine the pain is a ten and that with medicine the pain is a five, six, seven or ten; and that medicine helps the pain but does not take it away. Tr. 189-191.

Plaintiff also testified that he has arthritis in his right hand as a result of a broken wrist in 1997; that he is right-handed and cannot hammer with that hand; that he can "pick up a hammer and drive a nail into the wall, but it hurts sometimes"*;* that he broke his shoulder four to six years prior to the hearing; and that his shoulder causes him a "little pain." Plaintiff further testified that he takes a Librex for stomach problems; that he could not quit going to the bathroom on his last job; and that he had to quit work because he "could not quit going to the bathroom" and that "it was embarrassing." Tr. 194-96.

Plaintiff testified that he does "not really" have functional limitations walking; that he can no longer get up on a ladder because he would lose his balance; that he has trouble sitting in a chair for a long time; that he can sometimes sit for an hour at a time, depending on the day; that the pain in his lower back radiates down his legs and makes the back of his legs "ache real bad"; that he has to lay down daily, for five or fifteen minutes at a time, due to cramping in his muscles; that when he lays

down his muscles "start to relax"; that he can bend and touch his knees; that he can stoop down and get back up; that he used to be able to carry one-hundred pound sheetrock; that at the time of the hearing he could not do so; and that he cannot twist his right arm. Tr. 197-99.

Plaintiff testified that during the day he watches movies, takes care of his own personal hygiene, and sometimes drives to town where his wife has a store; that he goes to church on Sundays; that he sometimes grocery shops; that he does not have any trouble in the grocery store; that he does not do chores while his wife is at her store; and that his two children do the chores and yard work. Plaintiff further testified that he is not under the care of a mental health professional and that he does not smoke or have breathing problems. Tr. 199-201.

### III.
### MEDICAL RECORDS

Kenneth McVey, D.O., reported in a Diagnostic Imaging Report dated November 4, 2003, that Plaintiff had mild degenerative arthritis and mild scoliosis in his lumbar spine; that Plaintiff had early degenerative arthritis and slight scoliosis in his thoracic spine; and that Plaintiff had early degenerative arthritis in his cervical spine. Tr. 161-63.

Dr. McVey reported in a Diagnostic Imaging Report dated November 13, 2003, that an MRI of Plaintiff's lumbar spine indicated degenerative end plate changes at the L5-S1 level, a narrowing of the L5-S1 disc space, and bulging discs at L4-5 and L5-S1 levels with associated degenerative disc disease. Dr. McVey further reported on this date that an MRI of the lumbar spine showed that the vertebral body heights appeared maintained and the bony canal appeared adequate. Tr. 160.

Yuku Soeter, M.D., stated in a consultation note dated December 16, 2003, that Plaintiff was referred for low back pain and bilateral lower extremity radicular pain symptoms; that Plaintiff said he had low back pain for twenty years; that Plaintiff was taking Lorcet and Vioxx; that he complained of neck pain which pain is much less severe than his back pain; and that Plaintiff denied both bilateral

lower extremity weakness and urinary incontinence. Dr. Soeter further reported that physical examination reflected that Plaintiff was awake, alert and oriented; that his abdomen was soft; that he had tenderness to palpation at lower lumbar L4-5, L5-S1 region and "tenderness to palpation upper sacral area"; that Plaintiff had bilateral lower extremity motor strength of 5/5; and that his cranial nerves II through XII were "grossly intact." Dr. Soeter also reported on December 26, 2003, that the assessment was lumbago with bilateral lower extremity radicular pain symptoms and that Plaintiff was to undergo lumbar epidural injection. Tr. 182-83.

Dr. Soeter reported in a clinic note dated January 9, 2004, that Plaintiff was seen for a follow-up visit; that Plaintiff reported significant pain in his bilateral lower extremities and lumbar region; that Plaintiff reported that the character and intensity of the pain had not changed; and that he had no new pain. Dr. Soeter's operative note of this same date states that Plaintiff received a lumbar epidural steroid injection and that Plaintiff tolerated it well. Tr. 180-81.

Dr. Soeter stated in a clinic note dated January 23, 2004, that Plaintiff reported that he had an initial increase of pain for two days after he received an epidural injection; that he had a significant decrease in pain for about a week; and that the pain returned "to a certain degree" on January 22, 2004. Dr. Soeter also reported on January 23, 2004, that the plan was for Plaintiff to receive a bursa injection and a second lumbar epidural steroid injection and that he return to the clinic in two weeks for a third lumbar epidural injection. Dr. Soeter's records of this date reflect that Plaintiff received a lumbar epidural steroid injection and a bursa injection and that he tolerated these procedures well. Tr. 178-79.

Dr. Soeter stated in a clinic note dated February 6, 2004, that Plaintiff reported "more pain relief with lumbar epidural injection" and "significant pain relief with his middle back pain after his bursa injection." Tr. 176. Dr. Soeter's operative note of this same date states that Plaintiff had

bilateral lower extremity reticular pain symptoms in the pre and post-operative diagnosis and that Plaintiff received a lumbar epidural steroid injection and tolerated the procedure well. Tr. 177.

Dr. Soeter stated in a clinic note dated March 5, 2004, that Plaintiff reported he was "doing quite well, including continued pain relief for his bilateral lower extremity radiculopathy, lumbago and bursitis"; that Plaintiff was taking Vioxx daily for breakthrough pain; that he tolerated medication well; that he reported no new pain; that his pain management was "in stable condition"; and that Plaintiff was to return to the clinic in six weeks. Tr. 175.

Dr. Soeter stated in a clinic note dated April 16, 2004, that Plaintiff reported he was doing well, except that he had "recurrent pain in his lumbar region down to bilateral lower extremity"; that he was "very pleased with the initial three lumbar epidural steroid injections"; that before he could not cross his backyard without significant pain; that "[r]ight now, he was very comfortable until a couple of weeks ago when the pain returned"; and that there was no new pain. Dr. Soeter also reported on this date that the assessment included bilateral lower extremity radiculopathy, lumbago, and bursitis and that the plan was for Plaintiff to have a lumbar steroid injection that day and to return to the clinic in one month. Tr. 173. Dr. Soeter's operative note of this same date states that Plaintiff had bilateral lower extremity reticular pain symptoms in the pre and post-operative diagnosis and that Plaintiff received a lumbar epidural steroid injection and tolerated the procedure well. Tr. 174.

Dr. Soeter stated in a clinic note dated May 14, 2004, that Plaintiff reported good pain relief with lumbar epidural steroidal injections; that Plaintiff reported that he was doing much better with the injections than with the medications; and that Plaintiff requested a lumbar injection so he could stop with the pain medications because of their side-effects. Tr. 171. Dr. Soeter also reported that Plaintiff's diagnosis was lumbar disc bulging without myelopathy; that Plaintiff received a lumbar epidural steroid injection; and that he tolerated this procedure well. Tr. 172.

A progress note from the Samuel Medical Clinic dated July 6, 2004, states that there were no abnormal findings; that Plaintiff had IBS and back pain; and that he was prescribed Librex, Lorcet, and Vioxx. Records of this date are otherwise not legible. Tr. 149.

A progress note from the Samuel Medical Clinic dated July 30, 2004, states that Plaintiff had IBS and back pain; that Plaintiff was prescribed Librix, Lorcet and Soma; and that there were no abnormal findings. Records of this date are otherwise not legible. Tr. 148.

A progress note from the Samuel Medical Clinic dated September 27, 2004, states that Plaintiff's abdomen was soft and that his medications included Lorcet, Soma, and Vioxx. Records of this date are otherwise not legible. Tr. 146.

A progress note from the Samuel Medical Clinic dated November 23, 2004, states that Plaintiff had nasal mucosa; that he had a sore throat; and that his medications included Lorcet and Soma. Records of this date are otherwise not legible. Tr. 145.

A progress note from the Samuel Medical Clinic dated December 22, 2004, states that Plaintiff's lower back pain was well-controlled on Lorcet and Soma; that Plaintiff complained of continued difficulty of diarrhea and abdominal pain; that Plaintiff had chronic lower back pain and IBS; and that Plaintiff was prescribed Librex, Lorcet, Soma and Clinoral. No abnormal findings were noted on this date. Records of this date are otherwise not legible. Tr. 144.

A progress note from the Samuel Medical Clinic dated January 20, 2005, states that Plaintiff had back tenderness and received a refill on all medicines. Records of this date are otherwise not legible. Tr. 143.

A February 15, 2005, Residual Functional Capacity ("RFC") Assessment prepared by a senior counselor states that Plaintiff's primary diagnosis was "L SPINE DDD" and that his secondary diagnosis was "EARLY OA-C SPINE." This RFC assessment states that Plaintiff can lift or carry

twenty pounds occasionally and ten pounds frequently; that he can stand or walk, with normal breaks, for a total of six hours in an eight hour workday; that he can sit with normal breaks for a total of six hours in an eight hour workday; that he has no limitations in pushing or pulling, including operating hand or foot controls; that Plaintiff reported good pain relief from the epidural injection for his back problems and arthritis; that X-rays show early degenerative arthritis in T and C spine; and that Plaintiff stated he can do small household chores without problems, that he cannot do heavy walking and can only walk two to four hours at a time, that he goes outside daily, and that he drives and goes places every day. This February 15, 2005 RFC Assessment further states that Plaintiff's allegations were "partially credible as his condition did not appear severe enough to limit him more than noted above"; that Plaintiff's complaint of abdominal pain and IBS was assessed as non-severe because he had not required significant treatment; that Plaintiff has not established manipulative, visual, or communicative limitations; that the severity of the symptoms alleged by Plaintiff to produce physical limitations are "disproportionate to the expected severity or duration on the basis of [Plaintiff's] medically determinable impairments"; and that there was not a statement in the file by a treating or examining source regarding Plaintiff's physical capacities. Tr. 77-84.

A progress note from the Samuel Medical Clinic dated February 18, 2005, reflects that there were no abnormal findings. Records of this date are otherwise not legible. Tr. 142.

A follow up history and physical report from the Bluff Pain Center dated February 28, 2005, states that Plaintiff complained of constant sharp lower back pain; that this pain radiates into his right and left buttock, thighs and legs; and that he also had shoulder pain. Notes of this date further state that Plaintiff said that he had the pain of which he was complaining for ten years; that Plaintiff had positive straight leg sign; that knee and ankle jerks were present; that Plaintiff had tenderness at L1-

L5; that neurosensory deficits were absent; that Plaintiff's abdomen was soft and non-tender; that all cranial nerves were intact; and that his gait was normal. Tr. 169.

A letter dated March 2, 2005, from Abdul N. Naushad, M.D., of the Bluff Pain Center, addressed to Dr. Musser, states that Dr. Naushad saw Plaintiff on February 28, 2005, pursuant to a referral from Dr. Musser; that according to his history, signs, and symptoms, Plaintiffs's diagnosis was lumbar radiculopathy, degenerative disc/joint disease, and arthritis pain of the shoulder; that Dr. Naushad was managing Plaintiff with physical therapy, daily or alternative days exercise, avoidance of stress, weight lifting of more than 15-20 pounds, extreme bending, twisting, and reaching heights, and by Plaintiff's losing weight; that Plaintiff's medications included Lorcet, Soma, and Clinoril; and that Dr. Naushad would decide whether Plaintiff would require surgery after he saw Plaintiff's MRI/CT scan. Tr. 128.

A Diagnostic Imaging Report completed by Dr. McVey, dated March 4, 2005, states that the impression from an MRI of Plaintiff's thoracic spine was a probable mild bulging disc, more to the left at approximately the T5-6 level, and mild degenerative changes. Tr. 159.

A Diagnostic Imaging Report completed by Dr. McVey, dated March 4, 2005, states that the impression from an MRI of Plaintiff's lumbar spine was degenerative disc disease, mild degenerative arthritis, degenerative end plate changes at L5-S1, and a mild bulging disc at the L4-5 and L5-S1 levels causing mild pressure on the dural sac. Tr. 158.

Records from the Bluff Pain Center dated March 14, 2005, state that Plaintiff complained of lower back and shoulder pain and that his lower back pain was constant, sharp, and throbbing. Records of this date reflect that Plaintiff's pain was relieved by medication; that he had tenderness at L2-L5; and that his abdomen was soft and non-tender; that all cranial nerves were intact; and that his gait was normal. Tr. 127.

A progress note from the Samuel Medical Clinic dated March 22, 2005, states that Plaintiff had IBS and chronic back pain; that Plaintiff stated he continued to have pain; and that Plaintiff's abdomen was soft and non-tender. Notes of this date are otherwise not legible. Tr. 141.

A progress note from the Samuel Medical Clinic dated April 28, 2005, states that Plaintiff complained of IBS and back pain; that Plaintiff's medications, including Soma, Clinol and Lorcet, were refilled; and that there were bowel sounds in Plaintiff's abdomen. No abnormal findings were reported. Notes of this date are otherwise not legible. Tr. 139.

A progress note from the Samuel Medical Clinic dated June 20, 2005, states that Plaintiff had nasal mucosa and pharyngeal/tonsillar edma, and IBS. No abnormal findings were reported. Records this date are otherwise not legible. Tr. 135.

Records of the Advanced Pain Center dated July 15, 2005, reflect that Plaintiff complained of lower back pain and shoulder pain and that Plaintiff reported that he had this pain for ten years; that his pain was relieved by resting and medication; that his lower back pain would "come and go"; and that he had "aches" in his lower back. Records of this date further state that Plaintiff had tenderness at L2-L5 and S1; that Plaintiff's range of motion in either shoulder was not limited; that Plaintiff's abdomen was soft and non-tender; that neurosensory deficits were not present; that Plaintiff's gait was normal; and that Plaintiff was on Percocet. Tr. 124-25. Records of this date are otherwise not legible.

A progress note from the Samuel Medical Clinic dated July 18, 2005, reflects that there were no abnormal findings. This note is otherwise not legible. Tr. 136.

Records of the Advanced Pain Center dated August 15, 2005, reflect that Plaintiff complained of lower back pain and shoulder pain and reported that he had this pain for ten years; that his lower back pain "comes and goes"; that this pain radiates into his right/left buttock and thigh; that Plaintiff's

pain was relieved by medication; and that his shoulder pain was on the left side. Records of this date further state that Plaintiff's range of motion in his left shoulder was not limited; that Plaintiff's abdomen was soft and non-tender; that his gait was normal; and that his medications included Lorcet and Percocet. Tr. 122-23. Records of this date are otherwise not legible.

A progress note from the Samuel Medical Clinic dated August 16, 2005, is not legible other than to state that Plaintiff's medications included Lorcet, Librex, Soma, and Clinol. Tr. 137.

Records of the Advanced Pain Center dated September 15, 2005, reflect that Plaintiff complained of back and shoulder pain and that Plaintiff reported that his pain was relieved by medication; that he had this pain for ten years; his back pain "comes and goes"; and that Lorcet helped the pain. Notes of this date further state that Plaintiff's range of motion in his shoulder was not limited and that his abdomen was soft and non-tender. [3] Tr. 120-21.

## IV.
## DECISION OF THE ALJ

The ALJ noted that Plaintiff was forty-nine years old; that he completed high school education and had three years of college education; and that he had done past work as an aircraft cabinet maker and a self-employed cabinet maker/carpenter. After considering the medical evidence, the ALJ determined that Plaintiff's impairments did not meet or equal the criteria in the Listing of Impairments, Appendix 1, Part 404, Subpart P.

The ALJ concluded that Plaintiff's impairments preclude frequently lifting and carrying more than ten pounds and occasionally lifting and carrying more than twenty pounds and that he cannot perform his past relevant work. The ALJ used the Medical-Vocational Rules 202.20 through 202.22

---

[3] The "Follow Up History and Physical" which appears at page 121 of the administrative record is not dated. Its position in the record, however, reflects that it was completed on September 15, 2005.

of Table No. 2, of Appendix 2, Subpart P, Regulations No. 4, to find that given Plaintiff's age, education, past work history, and RFC, Plaintiff can perform work activities existing in significant numbers in his local or national economies. The ALJ found that Plaintiff was capable of performing work existing in significant numbers and substantial gainful activity since, at least, his alleged disability onset date. Accordingly, the ALJ concluded that Plaintiff is not under a "disability" as defined by the Act.  Tr. 11-17.

## V.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529.  "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'"  Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)).  In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b).  Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c).  The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities …" Id.  "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996)).  Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); Part 404, Subpart P, Appendix 1.  If the claimant

has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history.  Id.  Fourth, the impairment must prevent claimant from doing past relevant work.  20 C.F.R. §§ 416.920(e), 404.1520(e).  The burden rests with the claimant at this fourth step to establish his or her RFC.  Eichelberger, 390 F.3d at 590-91; Young v. Afpel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000).  The ALJ will review  a claimant's residual functional capacity and the physical and mental demands of the work the claimant has done in the past.  20 C.F.R. §§ 404.1520(f).    Fifth, the severe impairment must prevent claimant from doing any other work. 20 C.F.R. §§416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to produce evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC.  Young, 221 F.3d at 1069 n.5.  If the claimant meets these standards, the ALJ will find the claimant to be disabled.   "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id.  See also Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden  of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC").

Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence.  Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984).  "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).  In Bland v. Bowen, 861 F.2d 533 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

Id. at 535. See also Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision"); Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994); Turley v. Sullivan, 939 F.2d 524, 528 (8th Cir. 1991).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1994); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. Krogmeier, 294 F.3d at 1022 (internal citations omitted). See also Eichelberger, 390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001) (internal citations omitted).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

> (1) The findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ.& Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A).

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

(1) the claimant's daily activities;

(2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;

(3) any precipitating or aggravating factors;

(4) the dosage, effectiveness, and side effects of any medication; and

(5) the claimant's functional restrictions.

15

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322. The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. Id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. Id.; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. Masterson v. Barnhart, 363 F.3d 731, 738 (8th Cir. 2004); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995); Robinson v. Sullivan, 956 F.2d 836, 841(8th Cir. 1992); Ricketts v. Sec'y of Health & Human Servs., 902 F.2d 661, 664 (8th Cir. 1990); Jeffery v. Sec'y of Health & Human Servs., 849 F.2d 1129, 1132 (8th Cir. 1988). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence. Robinson, 956 F.2d at 841; Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988). The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). The ALJ need only acknowledge and consider those factors. Id. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

Residual functional capacity is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b-e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy. Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc). The Commissioner must first prove that the claimant retains the residual functional capacity

to perform other kinds of work. Id. The Commissioner has to prove this by substantial evidence. Warner v. Heckler, 722 F.2d 428, 431(8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. Nevland, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert may be used. An ALJ posing a hypothetical to a vocational expert is not required to include all of a plaintiff's limitations, but only those which he finds credible. Rautio, 862 F.2d at 180; Roberts v. Heckler, 783 F.2d 110, 112 (8th Cir. 1985). Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons. Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell, 892 F.2d at 750.

## VI.
## DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. Onstead, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm her decision as long as there is substantial evidence in favor of the Commissioner's position. Krogmeier, 294 F.3d at 1022.

Plaintiff contends that the ALJ's decision was not supported by substantial evidence; that the ALJ "erred in discrediting Plaintiff's pain associated with his physical impairment"; and that the ALJ erred by not obtaining the testimony of a vocational expert.

A.      **Substantial Evidence:**

In his Brief in Support of Complaint Plaintiff generally alleges that the ALJ's decision is not supported by substantial evidence. In support of this position Plaintiff recites portions of the

Regulations and case law and states the conditions of which Plaintiff complains. Further in support of his allegation that the ALJ's decision is not supported by substantial evidence Plaintiff alleges that the ALJ did not properly consider Plaintiff's complaints of pain and that the ALJ should have accepted Plaintiff's testimony that he has trouble sitting and needs to lie down daily due to his back pain and that he cannot work due his frequent need to use the restroom.

Upon discrediting Plaintiff's complaints of pain the ALJ considered Plaintiff's medical records. In regard to Plaintiff's IBS, the ALJ considered that Plaintiff was diagnosed with IBS in April of 2003; that Plaintiff's IBS was treated with Librex; that there was a lack of documentation in treatment notes of ongoing complaints of severe abdominal pain or severe bowel/bladder dysfunction; that there was no documentation of findings by a treating physician of significant limitations of IBS or IBS symptoms that are severe and uncontrollable despite treatment; and that Plaintiff's abdomen was generally described as soft with normal bowel sounds. The ALJ concluded that the medical records fail to document that Plaintiff's IBS was severe for twelve consecutive months.

In regard to Plaintiff's claim of arthritis in his right wrist joint as a result of fracturing his wrist in 1977, the ALJ considered that there was no documentation in the medical record of a fracture to the Plaintiff's wrist; that there was no documentation of treatment either aggressively or infrequently for complaints of pain in the right wrist; and that the medical record does not include documentation of any signs, symptoms, and clinical/diagnostic testing that establish arthritis within Plaintiff's wrist. The court notes that Plaintiff testified that he could "pick up a hammer and drive a nail into the wall, but it hurts sometimes." Tr. 194-195. See Kisling v. Charter, 105 F.3d 1255, 1257 (8th Cir. 1997) (holding that an ALJ may discount subjective complaints where there are inconsistencies in the evidence). The ALJ concluded that the record does not establish a medically determinable impairment of the right wrist.

In regard to Plaintiff's degenerative disc disease ("DDD"), the ALJ considered that there was documentation from the Samuel Medical Center of a DDD diagnosis and references to subjective complaints of costovertebral tenderness and that treatment notes from Dr. Naushad and Dr. Soeter both documented findings of subjectively positive straight leg raises and complaints of low back tenderness and pain in the buttocks, thighs, and feet. The ALJ noted, however, that treatment notes do not include ongoing medical findings of significant musculoskeletal or neurological deficits, severe loss of strength and motion, severe loss of sensation, decreased reflexes and coordination, an abnormal gait, or difficulties lifting and carrying. The ALJ further found that the treatment notes indicate the absences of long term deficits and signs. The ALJ also considered in regard to DDD that the absence of medical observations, of signs, symptoms and deficits undermine Plaintiff's credibility. Indeed, a "lack of objective medical evidence is a factor an ALJ may consider." Forte v. Barnhart, 377 F.3d 892, 895 (8th Cir. 2004). The court also notes, as discussed below, that Plaintiff reported relief from back pain with injections in February, March, and December 2004; that, as discussed below, Plaintiff reported in March, July, and September 2005 that his back and shoulder pain was relieved with medication; that medical records of July and August 2005 reflect that Plaintiff said his pain would "come and go"; and that February 2005 medical records reflect that Plaintiff's gait was normal, that he had a positive straight leg sign, that neurosensory deficits were absent. The ALJ concluded, as further discussed below, that Plaintiff's symptoms related to DDD were controllable through treatment.

In regard to Plaintiff's arthritis and osteoarthritis of the shoulders and the lumbar spine the ALJ considered treatment notes indicated an arthritis diagnosis in January and April 2003 and an osteoarthritis diagnosis in May and June of 2004. The ALJ further considered that the record did not

contain documentation of clinical and diagnostic testing revealing any arthritis, osteoarthritis or rheumatoid arthritis of the shoulders or any severe arthritis, or osteoarthritis or rheumatoid arthritis in the lumbar spine. The ALJ considered Plaintiff's x-rays of November 2003. The court notes that the November 2003 x-ray of Plaintiff's lumbar spine showed *mild* degenerative arthritis and *mild* scoliosis. The November 2003 x-ray of Plaintiff's cervical spine showed *early* degenerative arthritis and *no fracture or dislocation* of the well visualized cervical spine. The November 2003 x-ray of Plaintiff's thoracic spine reflected that there was *no fracture or dislocation*; that there were *early* degenerative changes; that the *disc spaces* were *well maintained*; and that there was *slight* scoliosis. Also, the March 2005 MRI of Plaintiff's lumbar spine showed that the lumbar vertebral body heights were maintained; that there was *mild* pressure on the dural sac at L4-5; that the bony canal was *adequate*; that there were *mild* degenerative changes present; that there was *mild* bulging at L4-5 and L5-S1 causing *mild* pressure; and that Plaintiff had *mild* degenerative arthritis. The ALJ concluded that the observations, medical facts, and diagnostic tests were inconsistent with Plaintiff's allegations of a severe impairment and detracted from his credibility. See 20 C.F.R. §§4.4.1529(c)(2), 416.929(c)(2); Forte, 377 F.3d at 895; Kisling, 105 F.3d at 1257. Based on the medical evidence the ALJ concluded that Plaintiff does have mild, early, and slight arthritic and degenerative disc changes in the spine but that Plaintiff does not have a impairment or combination of impairments which equal the appropriate listing.

In conclusion, after considering the medical evidence, the ALJ concluded that the record failed to establish medically determinable impairments of the right wrist and left shoulder and that, at most, Plaintiff has mild, early and slight arthritic and degenerative disc changes in the spine. The ALJ also found that Plaintiff has IBS which is not severe. The court finds that the ALJ's conclusion regarding

Plaintiff's alleged impairments is supported by substantial evidence on the record and that it is consistent with the case law and Regulations.

**B.     Plaintiff's Allegations of Pain:**

As set forth more fully above, the ALJ's credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole and a court cannot substitute its judgment for that of the ALJ.  Guillams V. Barnhart, 393 F.3d 798, 801(8th Cir. 2005); Hutsell, 892 F.2d at 750;  Benskin, 830 F.2d at 882. To the extent that the ALJ did not specifically cite Polaski, case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, as also more fully set forth above, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence. Randolph v. Barnhart, 386 F.3d 835, 842 (8th Cir. 2004); Wheeler v. Apfel, 224 F.3d 891, 896 n.3 (8th Cir. 2000);  Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Montgomery v. Chater, 69 F.3d273, 275 (8th Cir. 1995).  Additionally, an ALJ need not methodically discuss each Polaski factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for the ALJ to make.  See Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)). See also Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered."); Strongson, 361 F.3d at 1072; Brown v. Chater, 87 F. 3d 963, 966 (8th Cir. 1996).  In any case, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts."  Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001).  "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003).  See also Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006).  For the

following reasons, the court finds that the reasons offered by the ALJ in support of his credibility determination are based on substantial evidence.

First, as discussed above, the ALJ considered the substance of Plaintiff's medical records and concluded that these records detracted from Plaintiff's credibility. The court has found above that the ALJ's decision in this regard is supported by substantial evidence and that it is consistent with the case law and Regulations. See Forte, 377 F.3d at 895.

Second, the ALJ considered that Plaintiff alleged a disability onset date of August 15, 2003, yet there are no medical records which indicate recommendations by any treating physician that Plaintiff cease working at that time; that Plaintiff was fired from his work due to his impairment; or that his work suffered after the alleged onset date as a result of his impairment related limitations. A record which contains no physician opinion of disability detracts from claimant's subjective complaints. See  Edwards v. Secretary of Health & Human Services, 809 F.2d 506, 508 (8th Cir. 1987); Fitzsimmons v. Mathews, 647 F.2d 862, 863 (8th Cir. 1981). Further, leaving work for reasons unrelated to an alleged disabling impairment weighs against a finding of disability. Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992). As such, the court finds that the ALJ's decision in this regard is supported by substantial evidence and that it is consistent with the Regulations and case law.


 Third, the ALJ also considered that after Plaintiff's alleged onset date he began to work as a bail bondsman. The court notes that numerous medical records from 2005 reflect that Plaintiff had the pain of which he complains for ten years prior to that time and Dr. Soeter reported in December 2003 that Plaintiff said that he had low back pain for twenty years prior to that time. Plaintiff, nonetheless, testified at the hearing that he worked up to about three years prior to the hearing which was held in January 2006. "Working generally demonstrates an ability to perform a substantial gainful

activity." Goff, 421 F.3d at 792. The court finds, therefore, that the ALJ's considering Plaintiff's work history upon discrediting his claim of disabling pain is supported by substantial evidence and that it is consistent with the Regulations and case law.

Fourth, the ALJ considered that Plaintiff failed to report this income as a bail bondman to the Internal Revenue Service and that Plaintiff's willingness to withhold information from one Federal agency discounts his credibility in regards to informing another federal agency about his disability.

Fifth, the ALJ considered that Plaintiff had a sporadic work history since 1995 and that this does not enhance his credibility. The record shows that Plaintiff has no reported earnings in 1995, 1996, and 1997 and $4,815 in 2000. Tr. 58. A lack of work history may indicate a lack of motivation to work rather than a lack of ability. Pearsall, 274 F.3d at 1218. As such, the court finds that the ALJ's consideration of Plaintiff's work history is supported by substantial evidence and that the ALJ's decision in this regard is consistent with the case law and Regulations.

Sixth, the ALJ considered that Plaintiff does not have any adverse side effects from his prescribed medications. The absence of side effects from medication is a proper factor for the ALJ to consider when determining whether a plaintiff's complaints of disabling pain are credible. See Richmond v. Shalala, 23 F.3d 1441, 1444 (8th Cir. 1994). The court finds, therefore, that the ALJ properly considered the absence of side effects of Plaintiff's medications and further finds that substantial evidence supports the ALJ's conclusion in this regard.

Seventh, the ALJ considered that Plaintiff has not had any prolonged hospitalizations since his alleged onset date and that there was no medical evidence that Plaintiff sought treatment on a regular basis through physical therapy or work hardening.[4] These considerations are inconsistent with

---

[4]       The ALJ did state that Plaintiff did not seek treatment on a regular basis from a pain clinic. The record does reflect that Plaintiff went to a pain clinic in 2005. As discussed above and below, however, records from the pain clinic reflect that Plaintiff reported that he had

claims of a disabling impairment.  See Nelson v. Sullivan, 946 F.2d 13114, 1317 (8th Cir. 1991);

James for James v. Bowen, 870 F.2d 448, 450 (8th Cir. 1989); Johnson v. Bowen, 866 F.2d 274 (8th

Cir. 1989).  The court finds that the ALJ's decision in this regard is supported by substantial evidence

and that it is consistent with the Regulations and case law.

Eighth, the ALJ considered that there is no evidence that Plaintiff used an assistive device for

the purpose of ambulation. The failure to use an assistive device detracts from a claimant's credibility.

See e.g., Gonzales v. Barnhart, 465 F.3d 890, 895 (8th Cir. 2006).  The court finds that the ALJ's

decision in this regard is supported by substantial evidence and that it is consistent with the

Regulations and case law.

Ninth, the court notes that Plaintiff testified at the hearing regarding his daily activities that

he goes to church, takes care of his personal hygiene, sometimes drives, and sometimes grocery

shops.  A claimant's daily activities can be seen as inconsistent with his subjective complaints of a

disabling impairment and may be considered in judging the credibility of complaints.  Eichelberger,

390 F.3d at 590; Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001); Onstead, 962 F.2d at 805;

Murphy v. Sullivan, 953 F.2d 383, 386 (8th Cir. 1992); Benskin v. Bowen, 830 F.2d 878, 883 (8th

Cir. 1987); Bolton v. Bowen, 814 F.2d 536, 538 (8th Cir. 1987).  Although Plaintiff testified that he

does not do chores, an ALJ is not required to believe all of a claimant's assertions concerning his

daily activities.  Johnson v. Chater, 87 F.3d 1015, 1018 (8th Cir. 1996).  "[S]ubjective complaints of

pain cannot be disregarded solely because there is no supporting medical evidence, but they can be

---

the pain for many years; that his pain was relieved by medication; and that his pain would come
and go. Additionally, an "arguable deficiency in opinion-writing technique" does not require a
court to set aside an administrative finding when that deficiency had no bearing on the outcome.
Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Carlson v. Chater, 74 F.3d 869, 871 (8th
Cir. 1996); Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992).

discounted if the ALJ finds inconsistencies in the record as a whole." Zeiler v. Barnhart, 384 F.3d 932, 936 (8th Cir. 2004) (citing Johnson v. Chater, 108 F.3d 942, 947 (8th Cir. 1997)).

Tenth, the court notes that medical records of December, March, July, and August 2005 reflect that Plaintiff had relief from his pain with exercise and medication. Conditions which can be controlled by treatment are not disabling. See Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002); Murphy, 953 F.2d 383, 384 (8th Cir. 1992); Warford v. Bowen, 875 F.2d 671, 673 (8th Cir. 1989) (holding that a medical condition that can be controlled by treatment is not disabling); James, 870 F.2d at 450.

Plaintiff cites Collado v. Apfel, 63 F.Supp.2d 152 (D.P.R.1999), in support of his claim that the ALJ improperly discredited his complaints of pain. This case, however, is distinguishable from the matter under consideration as the ALJ in Collado failed to conduct a proper analysis of the claimant's subjective complaints of pain while, as set forth above, the ALJ in this matter considered Plaintiff's allegations of pain. Further, to the extent that the ALJ failed to cite specific evidence, such a failure does not indicate that such evidence was not considered. See Moore ex rel. Moore v. Barnhart, 413 F.3d718, 721 n.3 (8th Cir. 2005) ("The fact that the ALJ's decision does not specifically mention the [particular listing] does not affect our review."); Wheeler v. Apfel, 224 F.3d 891, 896 n.3 (8th Cir. 2000) (citing Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998) (holding that an ALJ is not required to discuss every piece of evidence submitted and that an "ALJ's failure to cite specific evidence does not indicate that such evidence was not considered"); Montgomery v. Chater, 69 F.3d 273,275 (8th Cir. 1995).

The court finds for the reasons set forth above that the ALJ's findings regarding Plaintiff's credibility and claims of disability are supported by substantial evidence on the record. Additionally, the decision of the ALJ in this regard is consistent with the applicable Regulations and case law.

## C.     Vocational Expert:

Plaintiff argues that the ALJ should have solicited the testimony of a vocational expert due to Plaintiff's non-exertional limitations. The ALJ found, however, that Plaintiff's alleged non-exertional limitation were not credible and that Plaintiff can frequently lift and carry more than ten pounds and can occasionally lift and carry more than twenty pounds. The ALJ further found, at Step 4 of the sequential evaluation process, that Plaintiff cannot perform his past relevant work.  As such, pursuant to the requirement of Step 5, the ALJ considered whether Plaintiff's RFC prevented him from doing other work. Relying upon the Medical-Vocational Guidelines the ALJ concluded that, although Plaintiff is not capable of engaging in his past relevant work, other work which Plaintiff is capable of performing exists in significant numbers.

Resort to the Medical-Vocational Guidelines is only appropriate when there are no non-exertional impairments that substantially limit the ability of Plaintiff to perform substantially gainful activity. Indeed, once a determination is made that a claimant cannot perform past relevant work, the burden shifts to the Commissioner to prove there is work in the economy that the claimant can perform. Robinson v. Sullivan, 956 F.2d  836, 839 (8th Cir. 1992).  See also Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996) (holding that when complaints of pain are explicitly discredited  by legally sufficient reasons, Guidelines may be used). If the claimant is found to have only exertional impairments, the Commissioner may meet this burden by referring to the Medical Vocational Guidelines. See Robinson, 956 F.2d at 839.  If, however, the claimant is also found to have non-exertional impairments that diminish the claimant's capacity to perform the full range of jobs listed in the Guidelines, the Commissioner must solicit testimony from a vocational expert to establish that there are jobs in the national economy that the claimant can perform. See id.  On the other hand, "'an ALJ may use the Guidelines even though there is a non-exertional impairment if the ALJ finds, and

the record supports the finding, that the non-exertional impairment does not diminish the claimant's residual functional capacity to perform the full range of activities listed in the Guidelines.'" Lucy v. Chater, 113 F.3d 905, 908 (8th Cir. 1997) (quoting Thompson v. Bowen, 850 F.2d346, 349-50 (8th Cir. 1988)).

SSR 83-10, 1983 WL 31251, at *6, defines a non-exertional impairment as "[a]ny impairment which does not directly affect the ability to sit, stand, walk, lift, carry, push, or pull. This includes impairments which affect the mind, vision, hearing, speech, and use of the body to climb, balance, stoop, kneel, crouch, crawl, reach, handle, and use of the fingers for activities." SSR 83-10, 1983 WL 31251, at *7, defines non-exertional limitation as "[a]n impairment-caused limitation of function which directly affects capability to perform work activities other than the primary strength activities." SSR 83-10, 1983 WL 31251, at * 6, defines non-exertional restriction as an "impairment-caused need to avoid one or more environmental conditions in a workplace."

The Eighth Circuit has explained the circumstances when a claimant has non-exertional limitations but the ALJ need not resort to the testimony of a VE. The court held in Sanders v. Sullivan, 983 F.2d 822, 823 (8th Cir. 1992), that:

 "[A]n ALJ may use the Guidelines even though there is a non-exertional impairment if the ALJ finds, and the record supports the finding, that the non-exertional impairment does not diminish the claimant's residual functional capacity to perform the full range of activities listed in the Guidelines." Thompson v. Bowen, 850 F.2d 346, 349-50 (8th Cir.1988). However, if the claimant's non-exertional impairments diminish his or her residual functional capacity to perform the full range of activities listed in the Guidelines, the Secretary must produce expert vocational testimony or other similar evidence to establish that there are jobs available in the national economy for a person with the claimant's characteristics. Id. at 349. "Non-exertional limitations are limitations other than on strength but which nonetheless reduce an individual's ability to work." Asher v. Bowen, 837 F.2d 825, 827 n. 2 (8th Cir.1988). Examples include "mental, sensory, or skin impairments, as well as impairments which result in postural and manipulative limitations or environmental restrictions." Id.; See 20 C.F.R., Pt. 404, Subpt. P, App. 2, § 200.00(e) (1992).

See also Harris v. Shalala, 45 F.3d 1190, 1194 (8th Cir.1995); Harris v. Shalala, 45 F.3d 1190, 1194 (8th Cir.1995). See also Reed v. Sullivan, 988 F.2d 812, 816 (8th Cir. 1993) ("[T]he ALJ may rely on the guidelines to direct a conclusion of either disabled or not disabled without resorting to vocational expert testimony if the ALJ determines that a claimant's non-exertional limitations do not *significantly* affect the claimant's RFC.") (emphasis added) (citing Thompson v. Bowen, 850 F.2d 346, 349 (8th Cir. 1988)).

While IBS may be a condition which limits the environments in which a person can work, the court has found above that the ALJ's determination that Plaintiff's IBS is not severe is supported by substantial evidence. As such, the ALJ was not required to obtain the testimony of a vocational expert due to Plaintiff's alleged IBS. Further, a review of the record establishes that substantial evidence supports the ALJ's decision that Plaintiff does not have non-exertional impairments which would preclude the ALJ's reliance upon the Guidelines. As set out above, the inconsistencies and lack of relevant documentation within Plaintiff's medical records serve as substantial evidence for the ALJ to discredit Plaintiff's complaints non-exertional limitations. Because substantial evidence supports the ALJ's decision that Plaintiff does not suffer from a non-exertional impairment which would limit his ability to perform substantial gainful activity, the ALJ was not required to obtain or consider the testimony of a vocational expert. See Reynolds, 82 F.3d at 258. Plaintiff's argument, that the ALJ should have utilized the testimony of a vocational expert, therefore, is without merit.

## VII.
## CONCLUSION

For the reasons more fully set forth above, the court finds that the ALJ's decision is supported by substantial evidence contained in the record as a whole, and that the Commissioner's decision should be affirmed.

**ACCORDINGLY,**

**IT IS HEREBY RECOMMENDED** that the relief sought by Plaintiff in his Brief in Support of Complaint be **DENIED** and that judgment should be entered in favor of Defendant. Doc. 15.

The parties are advised that they have eleven (11) days in which to file written objections to these recommendations pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this 26th day of September, 2007.